**Lawrence K. DODGE, Appellant-Respondent,**

v.

**Robert L. JACKSON, Jr., Respondent-Appellant,**

**Lawrence K. DODGE, Appellant,**

v.

**Peter L. CARPENTER, Respondent.**

**Nos. WD 32317, 32628.**

Missouri Court of Appeals, Western District.

April 20, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 1, 1982.

R. Lawrence Ward and Thomas A. Grimaldi, Kansas City, for appellant.

David F. Oliver, Kansas City, for respondent.

James E. Kelley, Jr., Kansas City, for appellant-respondent Lawrence K. Dodge.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

These are appeals by both Dodge and Jackson from an order of the trial court which: (1) found that plaintiff-Dodge's suit on certain promissory notes was barred by *res judicata*; and (2) found in favor of Dodge on defendant-Jackson's counterclaim for malicious prosecution and tortious interference with a business relationship. Carpenter, an original defendant with Jackson,

appears only as a respondent on Dodge's appeal.

The judgments of the trial court are affirmed.

## I.

Dodge originally filed a petition in the District Court of Johnson County, Kansas on January 22, 1976. In this action, Dodge sought to rescind a contract for the sale of his stock interests in a Kansas state bank to Jackson and Carpenter (defendants). After removal to the United States District Court for the District of Kansas, defendants filed a Motion to Dismiss for failure to state a claim, which was sustained after hearing. Dodge failed to appear at the hearing, nor did he file suggestions in opposition to the motion. Although the order of the court did not specify, the dismissal is deemed to be with prejudice under the Missouri, Kansas and federal law. Rule 67.03; K.S.A. § 60–241(b); Fed.R.Civ.P. 41(b).

The present action was filed in the Circuit Court of Jackson County, Missouri in December of 1976. This suit was based on the alleged breach of three separate agreements, all involving the same sale and purchase of bank stock which was the basis of the earlier suit in Kansas. Dodge's first amended petition was in three counts, Count I and III of which were subsequently dismissed by the trial court. Count II sought recovery of money damages for the defendants' non-payment of certain promissory notes that formed the basis of the parties' third agreement. Defendants filed a Motion to Dismiss in this action as well, asserting that the claim was barred by *res judicata* because Dodge had alleged the non-payment of these same notes in his earlier action for recission in Kansas. This motion was denied by the trial judge. After hearing evidence on both the claim and counterclaim, however, Judge Mauer determined that the evidence adduced at trial concerning the identity of the notes in question made it clear that "the principal of *res judicata* does apply in this case," citing to *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10 (1948).

■ Although the trial court and the parties have treated the matter here as governed by the doctrine of *res judicata*, the federal court's order of dismissal may better be sustained by rule of civil procedure (Rule 67.03) than by *res judicata*. In *Denny v. Mathieu*, 452 S.W.2d 114, 118–119 (Mo. banc 1970), the court concluded that a dismissal with prejudice is not "an adjudication on the merits equivalent in effect to a jury verdict," but that the dismissal simply "serves as a mechanism for the termination of litigation." *Denny* reversed a long line of cases holding that a dismissal with prejudice was tantamount to a judgment on the merits and held that the dismissal should only terminate future litigation of the same claim against the same party to that dismissal. The court requested a change in Rule 67.03 to reflect its decision, which was done by the Rules Committee in 1974. The rule now provides only that "[a] dismissal with prejudice bars the assertion of the same cause of action or claim against the same party." *See also Peoples-Home Life Insurance Co., v. Haake*, 604 S.W.2d 1, 8–9 (Mo.App.1980). Thus, there is no need for discussion of *res judicata*, as *Denny* and *Haake* make it clear that there has been no prior "adjudication".

The parties in the instant case are the same as those in the Kansas action. The only question here is whether, under Rule 67.03, the Kansas action involves "the same cause of action or claim" as the present action, and as such is barred. In deciding this question, this court must first examine the several agreements which are at the base of both the Kansas and Missouri actions.

The parties here entered into three separate agreements, all intended to culminate in the sale of Dodge's stock interests in the State Bank of Stanley, Kansas. The first of these agreements is evidenced by a letter of December 20, 1974, in which Dodge agreed to sell, and Jackson and Carpenter agreed to purchase the bank stock (the "purchase agreement"). The second agreement was a written agreement of January 6, 1975, which provided that Dodge be paid

as a consultant to the bank for two years (the "consultation agreement"). The third agreement of February 11, 1975, cancelled the consultation agreement and replaced it with an agreement whereunder Jackson and Carpenter would each pay Dodge a specified sum of money ($6,250) as evidenced by promissory notes in lieu of Dodge's consultation services (the "February 11 agreement"). The consultation agreement makes specific reference to the purchase agreement, and the February 11 agreement makes specific reference to the consultation agreement.

There was also a condition precedent to the February 11 agreement—a requirement that a separate "Oakwood Hills Agreement," dealing with an entirely separate real estate transaction, become "fully effective." If that Oakwood Hills Agreement did not become "fully effective," the February 11 agreement would be considered "null and void ab initio." At trial, defendant contended that the Oakwood Hills Agreement never became fully effective, and this is why no payments were made on the notes. This was the major issue at the trial on Dodge's claim.

■ It is clear from these facts that the issue of the promissory notes in the present action was an integral part of the same claim previously dismissed in the Kansas action. In that earlier Kansas action, Dodge's petition alleged the existence of the February 11 agreement (paragraph 9); alleged that defendants delivered the notes to Dodge "pursuant to the terms of the foregoing agreement" (paragraph 10); and alleged that "the defendants have thereby breached their agreement with plaintiff" (paragraph 11). Finally, in paragraph 12 of that petition, Dodge alleged that the defendants' failure to perform as required by the February 11 agreement was a material and substantial breach which should give rise to a recission of the sale agreements. Further, Dodge admitted at trial that the non-payment of the notes was a material fact as pleaded in the Kansas action. It cannot be contested that the Kansas cause of action was "the same cause of action or claim" as that asserted here. Rule 67.03.[1] Thus, the trial court did not err in granting defendants' motion to dismiss.[2]

■ Dodge's last contention is that the trial court misapplied the law of *Grue v. Hensley, supra,* which the court cited as authority for dismissal of Dodge's second action. *Grue,* supplies a two-part test for determining if a plaintiff has impermissibly "split" his cause of action, or whether the actions may be tried separately:

(1) whether separate actions ... arise out of the same 'act, contract or transaction'; (2) or, *whether the* parties, subject matter and *evidence necessary to sustain the claim are the same in both actions.* 210 S.W.2d at 10 (emphasis added).

Dodge argues that evidence concerning the meaning and interpretation of the Oakwood Hills Settlement Agreement, necessary for proper disposition of the Missouri action on the notes, would not have been relevant in the Kansas action, and that the second prong of *Grue* was therefore not satisfied. This contention ignores the fact that the only grounds pleaded for recission of the "entire contract" in the Kansas action was the failure of defendants to pay on the notes. Obviously, the evidence necessary to succeed in the Kansas action would have been of the same character as that in the Missouri action, *i.e.* did the Oakwood Hills Agreement become fully effective? Thus, the trial court did not misapply the test in *Grue.*

---

1. The same result in this case would be reached pursuant to either Kansas or federal Rule. K.S.A. § 60 241(b); Fed.R.Civ.P. 41(b). Those rules provided that the dismissal in the first action "operates as an adjudication on the merits," thus barring the second action as *res judicata.*

2. *Castle v. Tracy,* 463 S.W.2d 777, 780 (Mo. 1971), a res judicata case relied on heavily by Dodge, is totally inapposite. There, a second note was executed for the balance due on the first, and formed a separate and distinct contract. Here, however, the notes only modified a part of the consideration due on the overall transaction, and can not be deemed a separate and independent contract.

## II.

The trial court ruled adversely to Jackson on his two count counterclaim against Dodge for malicious prosecution and tortious interference with a business relationship (Carpenter, an original defendant, did not join in Jackson's counterclaim). The facts underlying these claims are as follows. Several months after defendants contracted with Dodge to purchase his stock interests in the Stanley Bank, defendants began actively trying to sell stock interests they already had in that same bank. On the day of the Stanley Bank's annual shareholders meeting, Dodge filed his suit in Kansas for recission and had defendants personally served at the meeting. This was the suit which resulted in the basis for the *res judicata* resolution of the suit discussed in Part I of this decision. At that time, defendants had a group of other shareholders interested in purchasing their interests, although no offers or agreements to purchase had been forthcoming. Jackson's counterclaim alleged that Dodge had filed the Kansas action with malice and without probable cause "solely to thwart or disrupt a then pending sale of stock by defendants . . . ." At trial, Jackson presented testimony from two of those proposed purchasers, who testified that the value of defendants' stock fell from as much as $807 to $700 per share immediately after Dodge filed his lawsuit. Defendants' sale to these purchasers was later consummated, at $700 per share.

■ On appeal, Jackson contends that the trial court's order was against the weight of the evidence as to both his tort claims. Jackson concedes that this court may set aside the trial court's judgment on this ground only "with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). This court must also give due deference to the trial court's opportunity to judge the credibility of the witnesses. *Johnson v. Mercantile Trust Co.*, 510 S.W.2d 33, 38 (Mo.1974); Rule 73.01(3)(b). Finally, since no findings of fact or conclusions of law were requested, this court must find all fact issues to be in accordance with the result,

*DePaul Hospital v. Southwestern Bell Telephone Co.*, 539 S.W.2d 542, 545 (Mo.App. 1976), and must give Dodge, as the prevailing party on this matter, the benefit of all evidence and permissible inferences favorable to him, *S. G. Adams Printing & Stationery Co. v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App.1978).

■ The six elements of an action for malicious prosecution are set out in *Stafford v. Muster*, 582 S.W.2d 670, 675 (Mo. banc 1979). Dodge correctly asserts that this court must affirm the trial court if Jackson's proof as to even one of those elements was not sufficient to uphold the trial court's order. One of the elements which Jackson had to prove was that Dodge did *not* have *probable cause* for initiating his Kansas action. "Probable cause" is defined as "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law." *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633 (Mo.banc 1977). The fact that Dodge's Kansas action was dismissed, while being some evidence of lack of probable cause, is not sufficient basis to conclude that Dodge lacked probable cause in filing his suit. *Haswell, supra,* at 633. *See also Young v. Jack Boring's Inc.*, 540 S.W.2d 887, 895 (Mo.App.1976).

■ Dodge filed his recission action alleging that defendants had made no payments on their promissory notes. The fact that defendants had not made those payments is uncontroverted. At trial of this case, defendants asserted that they were justified in not making those payments because Dodge had not fulfilled certain obligations under the Oakwood Hills Agreement. The trial court heard conflicting evidence as to whether that agreement was effective or not, and suffice it to say that the facts did not conclusively establish that the Oakwood Hills Agreement was not yet "fully effective." There was ample evidence in the record to support a finding that Dodge had "sufficient circumstances to

reasonably induce a belief in a person of ordinary prudence" that he could bring a suit against Jackson, plus a reasonable belief that the claim would be valid, the basis of which was Jackson's failure to pay on the notes. Because this point is ruled against Jackson, there is no need to determine if the trial court erred in failing to find that the evidence was sufficient to prove the other elements of a malicious prosecution action, or that the affirmative defense of good-faith reliance on counsel was not applicable.

The five elements for an action for tortious interference with a business relationship are set out in *Fischer, et al., v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 315 (Mo.banc 1979). "The *absence of justification* is an essential element of the claim . . . ." *Cady v. Hartford Accident and Indemnity Co.*, 439 S.W.2d 483, 485 (Mo.1969). Here, Jackson maintains that the trial court erred in not finding that Dodge was wholly without justification for filing his Kansas lawsuit. Jackson's contention is inimical to this opinion's earlier conclusion that there *was* ample evidence of probable cause for Dodge to file his suit for recission. Moreover, "[N]o liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right, that is, an act which one has a definite legal right to do without any qualification." *Pillow v. General American Life Insurance Co.*, 564 S.W.2d 276, 281 (Mo.App.1978); *Orr v. Mutual Benefit Health & Accident Ass'n.*, 240 Mo.App. 236, 207 S.W.2d 511, 515 (1947). Because Dodge had probable cause to file his Kansas action, he may not be held liable for exercising his right to do so. For these reasons, this court must find against Jackson on his second point.

The judgment of the trial court is affirmed.

All concur.